2022 IL App (2d) 220017-U
No. 2-22-0017
Order filed August 26, 2022

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| SHAKARAH LAPREE JOHNSON, | ) ) | Appeal from the Circuit Court of De Kalb County. |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | No. 21-SC-538 |
| ULONDA CARVER, d/b/a Hair Knowledge University, | ) ) ) | Honorable Thomas L. Doherty, |
| Defendant-Appellee. | ) | Judge, Presiding. |

JUSTICE JORGENSEN delivered the judgment of the court.
Presiding Justice Bridges and Justice Schostok concurred in the judgment.

**ORDER**

¶ 1     *Held:*   The trial court properly ruled that plaintiff was not entitled to a refund of tuition for a hair-braiding program where plaintiff did not provide written notice of her withdrawal in time to qualify for a refund.

¶ 2     *Pro se* plaintiff, Shakarah Lapree Johnson, appeals a judgment in her small-claims action against *pro se* defendant, Ulonda Carver, d/b/a Hair Knowledge University. Plaintiff contends that the trial court erred in denying her any recovery for tuition and fees that she paid to attend defendant's school, from which she withdrew before completing the contracted-for course of study. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4      Plaintiff's *pro se* complaint alleged as follows. On February 23, 2021, plaintiff signed a contract to enroll in defendant's licensed hair-braiding school, Hair Knowledge University, from March 26, 2021, through October 1, 2021. The course required 300 hours to complete. Plaintiff enrolled part-time at 10 hours per week. The tuition ($3200) and fees ($800) totaled $4000. Plaintiff paid $3000 upfront and completed the payments in May 2021. At some point before finishing her studies, plaintiff messaged defendant that she was withdrawing. Defendant did not respond. Eventually, they spoke in person. Defendant told plaintiff that she received her messages but chose not to respond. Plaintiff then requested all or part of her payments. Defendant refused to refund any of the payments.

¶ 5      The contract included a page entitled "Student's Rights," which stated in part:

    "6. You have the RIGHT to cancel your initial enrollment agreement up to midnight of the fifth business day after you have been enrolled.

    7. Should you use your RIGHT to cancel your initial enrollment agreement, cancellation MUST be in writing and given to the registered agent, if any, or managing employee of the school.

                                        * * *

    11. You have a RIGHT to a refund for certain unearned tuition, fees, and other charges. The refund policy is contained in the Illinois Barber, Cosmetology, Esthetics, Hair Braiding and Nail Technology Act of 1985 (Act) [225 ILCS 410/3-1 *et seq.* (West 2020)]."

¶ 6      The case proceeded to a bench trial. Defendant testified that, on or about July 23, 2021, plaintiff told her that she no longer wanted to attend the school. Defendant told plaintiff that she

had to follow paragraph 7 of the "Student's Rights" section of the contract by bringing in a written withdrawal, signing and dating it, and having the staff sign and date it. Plaintiff never submitted a written withdrawal.

¶ 7    The court showed defendant photographs of text messages from plaintiff's phone to defendant, dated on June 7, 8, and 11, 2021. The first read, "Hi Mrs. U. I will be discontinuing my education at [your school]." The second expressed plaintiff's regret at being unable to continue. The third said that plaintiff and defendant needed to discuss a partial refund of tuition and fees. Defendant testified that she never received any of the messages. The court asked her how long plaintiff attended the school. She testified that plaintiff last attended on July 23, 2021.

¶ 8    On cross-examination, defendant again stated that plaintiff's last day in school was July 23, 2021, when she told defendant in person that she would no longer attend. The trial court then asked plaintiff whether she agreed that her last day was July 23, 2021. Plaintiff responded that her last day was June 7, 2021, when she texted defendant that she was not continuing with her classes.

¶ 9    Defendant testified further that, during the July 23, 2021, meeting, she reminded plaintiff of section 1175.3100(c) of Title 68 of the Illinois Administrative Code (Code) (68 Ill. Adm. Code 1175.310(c), amended at 42 Ill. Reg. 15159 (eff. Aug. 10, 2018)), which governs hair-braiding schools. The provision reads:

"c) For students who enroll in and begin classes, the following schedule of tuition adjustment will be considered to meet the [Department of Financial and Professional Regulation] standards for refunds:

| PERCENTAGE OF A SCHEDULED COURSE COMPLETED | AMOUNT OF TUITION OWED THE SCHOOL |
|---|---|
| .01% to 4.9% | 10% |

| | |
|---|---|
| 5% to 9.9% | 30% |
| 10% to 14.9% | 40% |
| 15% to 24.9% | 45% |
| 25% to 49.9% | 70% |
| 50% and over | 100%" |

¶ 10    The trial court asked defendant whether she was seeking to be paid for work that she never did.  Defendant responded that plaintiff should have withdrawn according to the requirements so that her seat could be available for another student.  Defendant admitted that, after July 23, 2021, she managed to fill the vacancy.

¶ 11    The trial court stated that plaintiff had paid defendant in full and, from July 23, 2021, through October 1, 2021, another paying student replaced her.  Thus, defendant lost nothing for the period after defendant left.  The court ordered defendant to pay plaintiff $1000.

¶ 12    Defendant moved to reconsider.  On November 17, 2021, the trial court held a hearing. Plaintiff did not appear.  The court asked defendant whether she had been "able to make the money that [she] didn't get from [plaintiff] from others?"  Defendant testified that, after July 23, 2021, she was able to enroll one more student, but "[t]hat student was going to come whether [plaintiff] graduated and finished or whether she dropped out."  The court stated, "You're telling me under oath you did not get compensated for the balance of what she may have owed you[?]"  Defendant said yes.  That day, the court granted the motion to reconsider and denied plaintiff any recovery.

¶ 13    On November 22, 2021, plaintiff filed a motion for "Re-consideration [*sic*] of courts' [*sic*] order," alleging that she had not known of the hearing on defendant's motion to reconsider, because she had had her mail forwarded to another person, who did not inform her of the notice. Her motion did not raise any substantive claim of error.  On January 5, 2022, the court heard

plaintiff's motion. The court asked her why she believed the previous order was erroneous. Plaintiff explained that she believed that it was unjust for defendant to retain plaintiff's full tuition and fees without providing all of the contractual services. The court explained that defendant had been unable to replace plaintiff and, thus, recovering the full $4000 was not a windfall. That day, the court denied plaintiff's motion to reconsider. On January 11, 2022, she filed a notice of appeal.

¶ 14                                        II. ANALYSIS

¶ 15     In her *pro se* appeal, plaintiff contends that the trial court erred in denying her any recovery. She argues that, because her last day of attendance was June 7, 2021, she completed only 145 of the required 300 class hours and, thus, under the Code, was entitled to a 30% refund, although she requests only the $1000 that the court originally awarded her. Plaintiff argues that, even had she been required to notify defendant in writing of her withdrawal, her delay in doing so did not affect her right to the partial refund.

¶ 16     Before we may address the merits of plaintiff's appeal, we must consider whether we have jurisdiction. We have this obligation even though neither party raises the matter. See *Lebron v. Gottlieb Memorial Hospital*, 237 Ill. 2d 217, 251-52 (2010).

¶ 17     The timely filing of a notice of appeal is a prerequisite to our jurisdiction. *R.W. Dunteman Co. v. C/G Enterprises, Inc.*, 181 Ill. 2d 153, 159 (1998). A notice of appeal must be filed within 30 days after the entry of a final judgment, or, if a timely postjudgment motion is filed, within 30 days of the entry of the last pending postjudgment motion directed against the judgment. Ill. S. Ct. R. 303(a)(1) (eff. July 1, 2017).

¶ 18     Here, the final judgment from which plaintiff appeals was entered on November 17, 2021, when the trial court granted defendant's motion to reconsider and substantively modified the original judgment. See *Gibson v. Belvidere National Bank & Trust Co.*, 326 Ill. App. 3d 45, 50

(2001). Plaintiff filed her notice of appeal within 30 days of the order disposing of her motion to reconsider the grant of defendant's motion to reconsider. The question, however, is whether plaintiff's motion extended the time to appeal. If not, then this appeal is untimely because it was filed more than 30 days after the new judgment was entered.

¶ 19    To extend the time in which to file a notice of appeal, a postjudgment motion must request one or more of the forms of relief specified in section 2-1203(a) of the Code of Civil Procedure 735 ILCS 5/2-1203(a) (West 2020). These are "a rehearing, or a retrial, or modification of the judgment or to vacate the judgment or for other relief." *Id.* "Other relief" is "limited to requests that are similar in nature to the relief specified in section 2-1203." *Beck v. Stepp*, 144 Ill. 2d 232, 24 (1991). Plaintiff's motion was titled as one to "Re-consider [*sic*]," but it did not raise any claim of substantive error in the new judgment or imply it should be modified. Nonetheless, we conclude that the motion was sufficient to extend the time in which to appeal.

¶ 20    Our recent order in *Zemater v. County of De Kalb,* 2022 IL App (2d) 210471-U is persuasive here. There, the plaintiff 's postjudgment motion asked the trial court to " 'reconsider' " its judgment but did not attack the merits of the judgment. *Id.* ¶ 21. Nonetheless, we reasoned that "[t]o 'reconsider' a judgment is, in standard judicial parlance, to reverse, vacate, or modify it." *Id*. Thus, the case was akin to *Muirfield Village-Vernon Hills LLC v. Reinke & Co.*, 349 Ill. App. 178, 183 (2004), where the trial court dismissed the plaintiffs' third amended complaint and they filed a motion both for leave to file a fourth amended complaint and for the court to " 'reinstate' " their cause of action. *Zemater*, 2022 IL App (2d) 210471-U, ¶ 20. As this case comes within *Zemater*, we have jurisdiction. We turn to the merits.

¶ 21    Plaintiff contends that the trial court erred in denying her any recovery under the contract enrolling her in defendant's school. Plaintiff relies on the Code provision requiring schools

covered therein to refund 30% of the tuition paid by a student who completed between 25% and 49.9% of a scheduled course. Plaintiff argues that her last class day was June 7, 2021, after which she had completed only 145 of the scheduled 300 hours in the course. Plaintiff asks us to award her the $1000 that the trial court initially did.

¶ 22   To resolve this appeal, we must first construe the parties' contract. Our primary intent in contract construction is to effectuate the intent of the parties. *Gallagher v. Lenart*, 226 Ill. 2d 208, 232 (2007). Initially, we look to the language of the contract alone, "as the language, given its plain and ordinary meaning, is the best indication of the parties' intent." *Id*. at 233.

¶ 23   Here, in holding that plaintiff did not withdraw from defendant's school until July 23, 2020 (at the earliest), the trial court relied on paragraph 7 of "Student's Rights," which stated, "Should you use your RIGHT to cancel your initial enrollment agreement, cancellation MUST be in writing and given to the registered agent, if any, or managing employee of the school." The court construed this provision to apply to withdrawals after the period specified in paragraph 6 for canceling the contract. Because plaintifff does not dispute this construction of the contract, she has forfeited any argument that the trial court erred in holding that, to get out of further contractual obligations, plaintiff was required to submit a written withdrawal. See Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020) (claims of error not raised on appeal are forfeited).

¶ 24   Moreover, there was an obvious purpose to the notification requirement: by requiring a withdrawing student to submit a written notice to the school, the contract ensured that the student and the school would be "on the same page." Thus, there would be no danger that the student believed she had withdrawn while the school believed she was still enrolled. This, of course, is exactly what happened here. In June 2021, plaintiff messaged defendant that she wanted to withdraw immediately, but defendant never received the messages.

¶ 25    We conclude, therefore, that although plaintiff did not attend classes after June 7, 2021, she was still obligated to pay for her continuing enrollment until either (1) she withdrew from the course per paragraph 7 or (2) defendant waived paragraph 7 and recognized another withdrawal date. The second occurred here, and the trial court correctly held that plaintiff withdrew on July 23, 2021. By then, although she had attended only 145 hours of classes, she had enjoyed the contractual right to attend more, thus placing her over the 50% mark. To hold otherwise would render paragraph 7 of the contract superfluous and would also produce an unreasonable result: a student who attended all classes through July 23, 2021, would be liable for the full tuition, but another student who skipped the last few classes would receive a substantial refund. We shall not construe the contract to produce such a result, which could not have been the intent of the parties. See *Oshana v. FCL Builders, Inc.*, 2012 IL App (1st) 101628, ¶ 28 (courts prefer construction of a contract that makes it fair and likely to have been entered into by reasonable persons over one that makes it unfair or unreasonable).

¶ 26    Nonetheless, plaintiff contends that, even if paragraph 7 applied, section 1175.310(c) of the Code did not explicitly condition a partial refund on written notice of withdrawal. This argument does not persuade us. The Act and the Code do not define when or by what means a given percentage of a course has been "completed." Reasonably speaking, however, the enrollment contract determines this issue. To hold otherwise would risk creating confusion and inconsistency and deny schools and students alike fair notice of how the law applies to their particular circumstances. Administrative regulations should be construed according to the same principles that govern the construction of statutes (*Lipman v. Board of Review of Department of Labor*, 123 Ill. App. 3d 176, 180 (1984)), including that courts should avoid constructions that create absurdity, inconvenience, or injustice (*In re Marriage of Goesel*, 2017 IL 122046, ¶ 13).

Thus, we conclude that plaintiff completed more than 50% of the course and, therefore, the trial court correctly denied her a refund.

¶ 27                                    III. CONCLUSION

¶ 28    For the reasons stated, we affirm the judgment of the circuit court of De Kalb County.

¶ 29    Affirmed.